UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FEINER FAMILY TRUST and RON KRISSEL,
Individually and on Behalf of All Others Similarly
Situated,

                           Plaintiffs                  10-cv-3431 (RPP)
           - against -

                                                  **OPINION AND ORDER**

XCELERA INC., ALEXANDER M. VIK, GUSTAV
M. VIK, and MICHAEL J. KUGLER,

                         Defendants.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      This putative class action was brought in state court. Defendants removed the case to federal court and moved for dismissal. Plaintiffs have moved for remand to state court. In view of the prior litigation before this Court, the Defendants' motion is granted, and the Plaintiffs' motion is denied.

**I. Facts and Proceedings**

      On March 5, 2007, Plaintiff Feiner Family Trust filed a two count complaint consisting of a derivate shareholders claim and a putative class action claim ("Complaint 1") in this Court, alleging that Xcelera.com (hereinafter "Xcelera"), VBI Corporation, Alexander Vik, Gustav Vik, and Michael Kugler (collectively, "Defendants") had breached their fiduciary duty to Xcelera's shareholders. VBI Corporation is incorporated in the British Virgin Islands and owned by Alexander Vik, Gustav Vik, and Erik Vik; it owns 61.2% of Xcelera's voting shares. (Complaint 1 ¶ 10.) Alexander Vik is Chairman and CEO of Xcelera, a Cayman Islands corporation; Gustav Vik is a Director of Xcelera,

and also the Executive Vice President, Treasurer, and Secretary of Xcelera. (Id. ¶¶ 11-12.) Michael Kugler is a Director and Executive Vice President of Xcelera. (Id. ¶13.) Complaint 1 alleged that VBI and the individual defendants (collectively, "the Vik Defendants") "engaged in a scheme to artificially deflate the trading price of Xcelera's shares by refusing to file with the SEC any periodic reports," and that as a consequence the stock was de-listed from the American Stock Exchange in 2004 and de-registered by the SEC in 2006. (Id. ¶ 29.) Complaint 1 further alleged that the Vik Defendants then solicited the minority shareholders "to sell their holdings at artificially low prices."[1] (Id. ¶ 55.)

Defendants filed separate motions to dismiss on April 3, 2007 and May 18, 2007. On September 11, 2007, the Court granted the motions in part and dismissed Complaint 1. Feiner Family Trust v. VBI Corp., No. 07-cv-1914, 2007 WL 2615448 (S.D.N.Y. Sep. 11, 2007). The Court determined that Cayman Islands law applied, and that and that the Plaintiffs did not have standing to bring Count 1 derivatively, and that Count 2 failed to state a direct claim for breach of fiduciary duty under Cayman Islands law. Id. The Court granted Plaintiffs leave to move to file an amended complaint. Id.

On October 9, 2007, Plaintiffs moved to amend the complaint and submitted a proposed complaint ("Complaint 2"). Complaint 2 no longer contained the derivative claims made in Complaint 1. Complaint 2 contained additional information, but the outline of the breach of fiduciary duty and the allegedly fraudulent scheme was the same, namely that Defendants breached their fiduciary duty to minority shareholders by engaging in the same scheme to default on Xcelera's reporting obligation, causing its

---

[1] This allegation was conclusory. Moreover, Complaint 1 fails to allege that Defendants approached minority shareholders to solicit their shares.

securities to be first de-listed and later de-registered, and thereafter, that Defendants solicited minority shareholders to sell their stock at artificially low prices.[2] (Complaint 2 ¶¶ 26-46.) Complaint 2 added, as a named Plaintiff, Ron Krissel, a "former shareholder of Xcelera" who, after contacting Defendant Kugler, had sold his shares to an entity alleged to be an agent of the Defendants at a price of $.25 per share. (Id. ¶ 7.)

On December 14, 2007, Plaintiffs moved in their reply papers to the October 2007 motion to amend that they be allowed to append a claim under Section 10(b) of the Exchange Act to Complaint 2. They attached a proposed complaint ("Complaint 3") to these reply papers, which included additional counts alleging that Defendants had violated Section 10(b) of the Exchange Act and Rule 10b-5 and that the individual Defendants had violated Section 20(a) of the Exchange Act. (Complaint 3 ¶¶ 49-65.) On December 20, 2007, the Court denied this request without prejudice to Plaintiffs withdrawing their motion for leave to file a revised amended complaint and moving to file a second amended complaint.

On January 2, 2008, Plaintiffs filed a motion to file a second amended complaint and submitted a proposed complaint ("Complaint 4"). Complaint 4 alleges many of the same facts as alleged in Complaints 1 through 3, namely that Defendants engaged in a scheme to defraud by failing to comply with reporting requirements, resulting in the de-listing and de-registering of Xcelera's stock and that Defendants then solicited minority shareholders to sell their shares at prices made artificially low by the de-listing and de-registering.[3] Complaint 4 alleged four causes of action: (1) against all Defendants for

---

[2] This allegation was conclusory. Moreover, Complaint 2 fails to allege that Defendants approached minority shareholders to solicit their shares.
[3] This allegation was conclusory. Moreover, Complaint 4 fails to allege that Defendants approached minority shareholders to solicit their shares.

violations of Section 10(b) of the Exchange Act by engaging in a scheme to defraud shareholders (Complaint 4 ¶¶ 50-59); (2) against Xcelera for violation of Section 20(a) of the Exchange Act (Id. ¶¶ 60-65); (3) against VBI, Alexander Vik, and Gustav Vik for violation of Section 20(a) of the Exchange Act (Id. ¶¶ 66-72); and (4) against Xcelera, Gustav Vik, Alexander Vik, and Kugler for breach of their fiduciary duties. (Id. ¶¶73-78.) The motion was argued on September 11, 2008, and on December 15, 2008, the Court denied the motion for leave to file an amended complaint without leave for further amendment. Feiner Family Trust v. Xcelera.com, Inc., No. 07-cv-1914, 2008 WL 5233605 (S.D.N.Y. Dec. 15, 2008). The Court concluded that Complaint 4 failed to state a claim for which relief could be granted, and thus granting leave to re-plead would be futile. Id.

Plaintiffs appealed this decision to the Second Circuit Court of Appeals. On November 5, 2009, the Second Circuit affirmed the Court's December 15, 2008 decision. Feiner Family Trust v. VBI Corp., 352 Fed.Appx. 461 (2d Cir. 2009). The Court of appeals noted that Complaint 4 "is devoid of particular facts indicated that defendants actively encouraged minority shareholders to sell their stock back to Xcelera." Id. At 463-64.

On March 29, 2010, Plaintiffs filed the instant complaint ("Complaint 5") in the Supreme Court of the State of New York, County of New York. Complaint 5 was brought as a class action, contending that Defendants eliminated "any trading market in Xcelera common stock by failing to make the required filings with the SEC, causing the Company's stocks to be de-registered by the SEC, . . . failing to provide any current information concerning the Company's operations following the de-registration, and

causing Xcelera's stock not to be traded on any securities exchange," and then inducing minority shareholders to sell their stock at prices made artificially low as a result of the above scheme to defraud.[4]  (Complaint 5 ¶2.)  Complaint 5 alleged two causes of action: (1) against Xcelera, Gustav Vik, Alexander Vik, and Kugler for breach of fiduciary duty; and (2) against all Defendants for common law fraud.  (Id. ¶¶ 34-46.)

On April 23, 2010, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 and 15 U.S.C. § 77p(c).

On April 30, 2010, Defendant Kugler moved to dismiss Complaint 5.  On May 20, 2010, the remaining Defendants moved to dismiss Complaint 5.

On May 24, 2010, Plaintiffs filed an amended class action complaint ("Complaint 6").  Complaint 6 contains many of the same allegations as Complaint 5, including factual allegations that Xcelera's stock was de-listed in 2004 and de-registered in 2006. (Complaint 6 ¶¶ 22, 28.)  Complaint 6 does not make allegations that the de-listing and de-registering were a part of a deliberate scheme.  It does, however, include allegations that in 2005, "Defendants embarked on a scheme to freeze out minority shareholders by keeping the good operating news secret and simply refusing to make any new disclosures concerning Xcelera's financial condition or results of operations."  (Complaint 6 ¶24.) Later in Complaint 6, however, the scheme is described as pertaining only to events subsequent to the de-registration of Xcelera's stock: "Xcelera's knowing failure to provide investors with current information concerning Xcelera's financial condition and results of operations from 2006 onward has prevented, and continues to prevent, Plaintiffs and other members of the Class from knowing the intrinsic value of Xcelera's

---

[4] This allegation was conclusory.  Moreover, Complaint 5 fails to allege that Defendants approached minority shareholders to solicit their shares.

stock or realizing any such value in any securities market." (Id. ¶ 31.) Complaint 6 further alleges conclusorily that "Defendants have been soliciting the Company's minority shareholders to sell their stock to Defendants at undervalued prices."[5] (Id. ¶ 32.) Complaint 6 alleges two causes of action: (1) against Xcelera, Gustav Vik, Alexander Vik, and Kugler for breach of fiduciary duty (Id. ¶¶ 34-39) ; and (2) against all Defendants for common law fraud. (Id. ¶¶ 40-46.)

On the same day that they filed Complaint 6, May 24, 2010, Plaintiffs moved for remand to state court.

The Court heard argument on these motions on June 18, 2010.

## II. Discussion

### A. SLUSA Preemption

The Securities Litigation Uniform Standards Act (SLUSA), Pub. L. No. 105-353, 112 Stat. 3227, "provides that no covered class action based on state law and alleging a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security may be maintained in any State or Federal court by any private party." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 74 (2006) (internal quotation marks omitted) (citing 15 U.S.C. § 78bb(f)(1)(A)). Under this standard, SLUSA will preempt an action if four prerequisites are met: "(1) the action is a covered class action, (2) the claims are based on state law, (3) the action involves a covered security, and (4) the claims allege a misrepresentation or omission of material

---

[5] This allegation was conclusory. Moreover, Complaint 6 fails to allege that Defendants approached minority shareholders to solicit their shares.

fact in connection with the purchase or sale of the security." In Re WorldCom, Inc. Sec. Litig., 308 F. Supp. 2d 236, 243 (S.D.N.Y. 2004) (internal quotation marks omitted).

A "covered class action" is, as defined by the statute in relevant part, "any single lawsuit in which . . . one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members."  15 U.S.C. § 78bb(f)(5)(B).  Neither party contends that this action is not a covered class action, and the Court finds that this prerequisite is satisfied.

Both the claims in the operative complaint are, on their face, brought pursuant to state law.  See LaSala v. UBS, AG, 510 F. Supp. 2d 213, 237 (S.D.N.Y. 2007) (concluding that foreign law falls within the term "state law," as used in SLUSA). Plaintiffs do not contend otherwise.

A security is deemed a "covered security" if it is "traded nationally and listed on a regulated national exchange."  Dabit, 547 U.S. at 83.  Plaintiffs do not contend, nor could they, that Complaints 1 through 5 did not involve a covered security.  As alleged in Complaints 1 through 5, Defendants' scheme was hatched and implemented while the securities were still listed and registered, i.e. while the securities were covered by the SLUSA.  In this case, once Defendants filed their motion to dismiss, in which they argued that the case was preempted by SLUSA, Plaintiffs simply amended their complaint to remove any factual allegations that the scheme began before the stock was de-listed and de-registered.  Such "artful pleading" is unavailing.  See In Re WorldCom, Inc. Sec. Litig., 308 F. Supp. 2d 236, 244 (S.D.N.Y. 2004) ("[C]ourts in this circuit have

consistently rejected plaintiffs' attempts through artful pleading to avoid the clear precepts of SLUSA and its preemption of state law securities claims for damages."). Up until Plaintiffs filed the operative complaint, their claims rested on factual allegations about a scheme to defraud involving a covered security. Such evasive techniques do not obscure the nature of this action – it, like the preceding action, involves a covered security. Therefore, the Court concludes that this prerequisite is satisfied.

To show that the lawsuit is "in connection with the purchase or sale of a covered security," it is only necessary to point to allegations that the misrepresentation or omission "coincide[d] with a securities transaction – whether by the plaintiff or by someone else." Dabit, 547 U.S. at 85 (internal quotation marks omitted). The Supreme Court has emphasized that this provision should be interpreted broadly. Id. at 85-88. Here, the fraudulent scheme, as alleged in Complaints 1 through 5, coincided with the solicitation and, in one instance, the purchase of shares from a minority shareholder by an alleged agent of Defendants. Thus, the final prong is met. Both causes of action in Complaint 6 are covered by SLUSA.

Plaintiffs contend, however, that even if the Court finds that the claim of common law fraud is preempted by SLUSA, the claim for breach of fiduciary duty is not subject to SLUSA preemption, due to what is known as the Delaware carve-out. (Pl. Mem. Opp. Mot. to Dismiss at 4-6.) The relevant provision of SLUSA provides that a class action, brought under the law of the state in which the issuer is incorporated and involving "the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer" may be maintained in either state or federal court and is not subject to SLUSA preemption. 15 U.S.C. § 78bb(f)(3)(A)(i)-(ii). For the

purposes of the motion to dismiss, and drawing all inferences in favor of Plaintiffs, the Court concludes that the breach of fiduciary duty claim falls within the Delaware carve-out, and thus is not preempted by SLUSA. See Lewis v. Termeer, 445 F.Supp.2d 366, 372-73 (S.D.N.Y. 2006) (noting that legislative history suggested that this savings clause was motivated by "the need to exempt from the legislation shareholder-initiated litigation based on breach of fiduciary duty of disclosure").

Thus, the Court concludes that Count II in Complaint 6, alleging common law fraud, is preempted by SLUSA, but Count I, alleging breach of fiduciary duty, is not preempted by SLUSA.

**B. Supplemental Jurisdiction**

Plaintiffs urge the Court to find that SLUSA's mandatory remand provision applies to any of the claims not preempted by SLUSA. The mandatory remand provision reads: "In an action that has been removed from a State court pursuant to paragraph (2), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court." 15 U.S.C. § 78bb(f)(3)(D).

Courts in this Circuit have concluded that the term "action" in SLUSA's mandatory remand provision is not synonymous with "claim." See Winne v. Equitable Life Assurance Soc'y of United States, 315 F. Supp. 2d 404, 416 (S.D.N.Y. 2006) ("If a non-preempted state-law claim is appended to a claim preempted under SLUSA, federal jurisdiction over the latter would permit removal of the entire case, to the extent authorized by the doctrine of supplemental jurisdiction. But in such a case, only the preempted claim would be dismissed on the merits; the pendent claims could then be

9

adjudicated or remanded to state court."); see also Gray v. Seaboard Sec., Inc., 241 F. Supp. 2d 213, 222 (N.D.N.Y. 2003). For this reason, the Court concludes that the mandatory remand language of SLUSA does not prevent the Court from exercising supplemental jurisdiction over the non-preempted state law claims. Rather, a federal court may exercise supplemental jurisdiction over any claims not preempted by SLUSA, in an action in which certain state law claims are preempted, pursuant to 28 U.S.C. § 1367(a). See Gray, 241 F. Supp. 2d at 222.

Here, because of the lengthy history of this case and because it is considerably more efficient to address the pendant state law claim at this point rather than to remand it to the state court for further proceedings, it is an appropriate exercise of this Court's discretion to exercise supplemental jurisdiction over the Plaintiffs' claim for breach of fiduciary duty.

**C. Claim Preclusion**

Defendants contend that the breach of fiduciary duty claim is barred by the doctrine of *res judicata*, also known as claim preclusion. Claim preclusion applies and bars re-litigation, where "the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." In re Teltronics Servs., Inc., 762 F.2d 185, 190 (2d Cir. 1985).

Plaintiffs contend that the Court's decision in the prior litigation on December 15, 2008 only contained "dicta" on the substantive issues and thus was not a final decision on the merits. (Pl. Opp. 17-19) The Court, however, dismissed the Plaintiffs' claim of breach of fiduciary duty on September 11, 2007 for failure to state a claim under Cayman

Islands law, namely failure to allege a special relationship under, Cayman Islands law, between the directors of the company and the minority shareholders. Feiner Family Trust v. VBI Corp., No. 07-cv-1914, 2007 WL 2615448 (S.D.N.Y. Sep. 11, 2007). In December 2008, the Court denied with prejudice the Plaintiffs' motion for leave to amend the complaint, noting that the proposed complaint "still fails to describe any contact between Plaintiffs and Defendants that could give rise to a fiduciary relationship," and dismissed the action. Feiner Family Trust v. Xcelera.com, Inc., No. 07-cv-1914, 2008 WL 5233605, at *7 (S.D.N.Y. Dec. 15, 2008).

Under Second Circuit precedent, a denial of leave to amend a complaint is a final decision on the merits. Northern Assur. Co. v. Square D Co., 201 F.3d 84, 88 (2d Cir. 2000). Thus Teltronic's first prong is satisfied. There is no dispute on the second and third prong, that this decision was made by "a court of competent jurisdiction" and that the parties were the same. And the breach of fiduciary duty cause of action was substantially identical throughout the many complaints filed in this case. Thus Teltronic's fourth prong has been met. Accordinly, this claim is barred from relitigation by the doctrine of claim preclusion.

**III. Conclusion**

For the reasons described herein, SLUSA preempts Plaintiffs' claim of fraud, and the Plaintiffs' claim of breach of fiduciary duty is barred from relitigation by the doctrine of claim preclusion. The Defendants motion to dismiss is granted, the Plaintiffs' motion to remand is denied, and judgment in favor of the Defendants is granted.

IT IS SO ORDERED.

Dated: New York, New York
       August 6, 2010

                                          Robert P. Patterson, Jr.
                                                U.S.D.J.

Copies of this order were faxed to:

**Counsel for Plaintiffs:**
**Jeffrey Simon Abraham, Philip T. Taylor**
Abraham Fruchter & Twersky LLP
One Penn Plaza
Suite 1910
New York , NY 10119
212-279-5050
Fax: 212-279-3655

**Counsel for Defendants:**
**Peter J. Macdonald, Jacob David Zetlin-Jones, Paul Michael Winke**
Wilmer, Cutler & Pickering (NY, 31st Floor)
399 Park Avenue, 31st Floor
New York , NY 10022
212-937-7200
Fax: 212-937-7300

**Robin L. Alperstein**
Becker, Glynn, Melamed & Muffly, LLP
299 Park Avenue
New York , NY 10171
(212) 888-3033
Fax: (212) 888-0255